# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:12-cr-97-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| LAVONTE LAMONT HALLMAN, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 149). Defendant Lavonte Lamont Hallman is serving a sentence of 294 months in prison for robbery offenses, a felon-in-possession offense, and brandishing a firearm during and in relation to a crime of violence. (Doc. No. 76). Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that if he were sentenced today, he would not be classified as a career offender and that this circumstance is an extraordinary and compelling reason to justify his release. The Government has responded in opposition to the motion. For the following reasons, Defendant's motion will be **DENIED**.

### I. BACKGROUND

In December of 2011, Hallman robbed an O'Reilly's Auto Parts Store in Charlotte, North Carolina. (Doc. No. 57 ¶ 5). Hallman pointed a pistol at two store employees during the robbery, warning them that they had 10 seconds to open the cash register drawer. (Id.). Hallman then began counting down from ten. (Id.). Hallman stole $336 from the store. (Id.). A customer was also present during the robbery. (Id.).

At the time Hallman committed the robbery, he had previously been convicted of

-1-

conspiracy to commit the armed robbery of an Advance Auto Parts store in Charlotte. (Id. at ¶ 35). He had also been convicted of common law robbery of a different Advance Auto Parts Store, also in Charlotte. (Id. at ¶ 40). During both of these prior offenses, Hallman pointed a firearm. (Id. at ¶¶ 35, 40).

A federal grand jury indicted Hallman and charged him with Hobbs Act conspiracy, 18 U.S.C. § 1951; Hobbs Act robbery, 18 U.S.C. § 1951; brandishing a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). (Doc. No. 1). A jury found Hallman guilty of all these offenses. (Doc. No. 46). This Court's probation office submitted a presentence report and determined that Hallman was a career offender based on his prior common-law robbery and armed robbery conspiracy convictions. (Doc. No. 57 ¶ 26). Based on a total offense level of 32 and a criminal-history category of VI, the probation office found that the Sentencing Guidelines advised a sentence of between 360 months and life in prison. (Id. at ¶ 82).

This Court sentenced Hallman to a downward-variance term of 210 months in prison for the robbery offenses, to a concurrent term of 36 months for the felon-in-possession offense, and to a consecutive term of 84 months in prison for the firearm offense, for an aggregate term of 294 months in prison. (Doc. No. 76 at 2). This Court explained that it believed Hallman's Hobbs Act robbery offense to fall outside of the heartland of Hobbs Act cases and that it varied downward to avoid unwarranted sentence disparities between Hallman and similarly situated defendants. (Doc. No. 77 at 3; Doc. No. 89 at 49). In March of 2021, this Court denied Hallman's earlier motion for compassionate release. (Doc. No. 142). This Court found in part that Hallman had not demonstrated that he is not a danger to the safety of the community or that

"he otherwise merits release under the § 3553(a) factors." (Doc. No. 142 at 7). While in the Bureau of Prisons, Hallman has committed three disciplinary infractions, including his possession of a dangerous weapon in January of 2019. (Doc. No. 149 at 32). Hallman has completed 16 educational programs. (Id. at 28). Hallman also has significant community and family support. (Id. at 33−35, 39−50). Hallman filed a request for compassionate release with the warden of his Bureau of Prisons facility earlier this year, and that request was denied on June 1, 2022. (Id. at 51). Hallman now asks this Court to grant him compassionate release because if he were sentenced today, he would not be classified as a career offender.

On July 8, 2022, the Court ordered the Government to respond. (Doc. No. 150). The Government opposes Defendant's motion for compassionate release. (Doc. No. 151).

## II.     DISCUSSION

18 U.S.C. § 3582(c)(1)(A) permits this Court to reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i)

-3-

"extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The policy statement further includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons."

However, that policy statement was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that district courts are not limited to the grounds for compassionate release identified in § 1B1.13, and that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").

Therefore, this court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release and the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may continue to consider the § 1B1.13 factors, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v.

-4-

Case 3:12-cr-00097-MOC-DCK    Document 153    Filed 09/26/22    Page 4 of 8

Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

### a. Extraordinary and Compelling Reasons

Defendant's request for a compassionate release will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. Defendant does not contend that he satisfies any of the criteria for compassionate release authorized in section 1B1.13. Defendant also does not alleged any disparity between the sentence he received and the sentence "provided for under the First Step Act." McCoy, 981 F.3d at 286. Instead, Defendant asserts three reasons to support his argument as to why a reduction in his sentence is appropriate.

First, Defendant asserts that if he were sentenced today, he would not be classified as a career offender, because his offense of conviction ─ Hobbs Act robbery ─ is not a "crime of violence" under the career-offender guideline. See United States v. Green, 996 F.3d 176, 184 (4th Cir. 2021). Rather than a guideline range of between 360 months and life in prison, Hallman would face an aggregate guideline range of between 161 and 180 months in prison.

While this guideline range is significant, it does not amount to an extraordinary and compelling reason. This Court found that Hallman's offense conduct was not as serious as the average Hobbs Act robbery offense and chose to vary downward from the advisory guidelines range for that reason, but his offense conduct and prior robbery offenses would likely have warranted an upward variance had the Guidelines advised a sentence of 77 to 96 months for the Hobbs Act robbery offenses. Regardless of whether he is classified as a career offender, Hallman's criminal history includes three violent robbery offenses, including this offense. Both

-5-

of his earlier robbery offenses included his pointing a firearm, and during this offense, he threatened his victims with a firearm while counting down from ten. Based on the nature and circumstances of the offense and Hallman's criminal history, Hallman's sentence of 210 months in prison does not amount to an extraordinary and compelling reason to grant Hallman's request for compassionate release.

Second, Defendant asserts that he has been rehabilitated and is no longer a safety risk to the community. (Doc. No. 152 at 4). He explains that he has been participating in different programs offered to inmates. (Id.). It is well settled that compassionate release cannot be based on rehabilitation alone, and a defendant's claim of an exemplary prison record and being successfully rehabilitated does not present an extraordinary circumstance. United States v. Washington, No. CR 5:13-020-DCR, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019). Furthermore, Defendant's most recent disciplinary infraction from January 2019 involves possession of a dangerous weapon. (Doc. No. 149 at 32). This behavior undermines Defendant's assertion that he has been a good inmate who has been fully rehabilitated.

Third, Defendant cites U.S. v. Tuakalau, 2:08-CR-00431-TC-4, 2022 WL 1091334 (D. Utah Apr. 12, 2022) and contends that an extraordinary and compelling reason exists when a defendant can prove he would possess greater plea-bargaining leverage if he were being sentenced today. (Doc. No. 149 at 3). However, this case is very different from Tuakalau. First, the defendant in Tuakalau sought compassionate release from a sentence which was the product of accepting a plea deal. Tuakalau 2022 WL 1091334, at 2. Here, Hallman rejected a plea deal and decided to go to trial. In other words, the plea deal did not determine Hallman's sentence. Second, plea-bargaining leverage was one of many factors considered in the Tuakalau

-6-

compassionate release case and it was never asserted – as it is by Hallman – that plea-bargaining leverage alone amounts to an extraordinary and compelling reason for compassionate release.

### b. Section 3553(a) Factors

The Court further finds that the factors set forth in 18 U.S.C. § 3553(a) counsel against release. Title 18, United States Code, Section 3553(a)(2), calls for a sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.

While Hallman would not be sentenced as a career offender if he were sentenced today, United States v. Green, 996 F.3d 176, 184 (4th Cir. 2021) (holding that Hobbs Act robbery is not a crime of violence), this Court varied downward significantly when it sentenced Hallman. Releasing Defendant after having served just 110 months of this significantly reduced sentence would "not reflect the seriousness of the offense, or provid[e] just punishment for the offense. Moreover, rather than promoting respect for the law and its deterrent effect, it would undermine it." United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (denying release of defendant who had served about three years on eight-year armed robbery conviction).

Furthermore, the evidence before the Court suggests that Defendant would pose a danger to the community if released. A year and a half ago, this Court determined that Hallman failed to demonstrate that he is not a danger to the safety of the community. (Doc. No. 142). Section 3553(a) factors, including Defendant's criminal history and misconduct in prison, still support that determination today. Defendant has three convictions for committing armed robberies of

auto parts stores; in 2007, at age 19, he pleaded guilty to conspiracy to commit armed robbery and received a suspended sentence; and in 2010, at age 21, he pleaded guilty to common law robbery and again received a suspended sentence. Although Defendant claims to have been rehabilitated in prison, his disciplinary record indicates that he possessed a dangerous weapon in the prison in 2019.

To promote respect for the law, deter Defendant, deter others, prevent future crimes of Defendant, and provide adequate punishment, the Court finds that Defendant shall serve his justly imposed sentence.

### III. CONCLUSION

In sum, for all these reasons, the Court denies Defendant's motion. The Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 149), is **DENIED**.

Signed: September 26, 2022

Max O. Cogburn Jr
United States District Judge